Coal Co. v. Tompkins.

No. 20,022.

THE ATLAS COAL COMPANY, *Appellee*, V. C. F. TOMPKINS, *Appellant*.

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review—Verdict Unsupported by the Evidence.* An examination of the record discloses no error in relation to the evidence or instructions, but held that the verdict is without support.

2. FRAUDS, STATUTE OF—*Debt of Another—Verbal Promise Not Binding.* A seller of coal attempted to hold a vendee of the buyer liable on an alleged verbal promise to pay therefor, without releasing the buyer. *Held,* that under such circumstances a promise in writing only could render such vendee liable.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed July 8, 1916. Reversed.

*Junius W. Jenkins,* of Kansas City, for the appellant.

*George W. Littick,* of Kansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.: Plaintiff sued to recover a claimed balance of $187.04 for two cars of coal. The jury found in favor of the plaintiff, and the defendant appeals, alleging error in overruling a demurrer to the plaintiff's evidence, in refusing and giving certain instructions, and in overruling a motion for a new trial.

In March, 1912, J. W. Turner rented a coal yard of the defendant, Tompkins, purchasing coal of him in carload lots. The two cars in question, however, were bought of the plaintiff coal company to be paid for within ten days after delivery. It was delivered October 26, 1912, and unloaded into the yard, and a small portion of it sold by Turner. In the meantime Turner had become indebted to Tompkins, and on October 31 they entered into an agreement, which was reduced to writing November 7, by which Turner assigned and sold to Tompkins all the coal on hand and all outstanding bills and indebtedness, Turner to be credited on his account for the value of the coal. He also reserved the right to collect the outstanding bills and accounts and receipt in the name of J. W. Turner

& Company, and agreed to pay over to Tompkins all money collected and to report daily all collections made. He was to occupy the position of yard boss or foreman, with power to hire drivers and coal carriers and to solicit and build up the business. Paragraph 6 of the contract was as follows:

"It is hereby agreed that all profits derived from said business shall be credited to the account of the party of the first part, including the claim of The Atlas Coal Company against the said J. W. Turner until said account shall be paid in full."

Tompkins took possession under this agreement and Turner notified the agent of the plaintiff thereof. The agent came to the yard and saw the coal and claimed to take possession of it, but left it where it was. Tompkins continued the business under the contract for three months, during which time he offered the plaintiff's agent $44 as the *pro rata* part of the profits, which was refused. Afterwards the plaintiff sued Turner on the account and garnished and collected a certain portion thereof, and Turner was given credit therefor. Tompkins was also made a defendant in that action. The bill of particulars therein stated that the coal was sold and delivered to Turner, and that on October 31, 1912, Tompkins took charge of the coal yard and of the coal and "verbally and by implication by taking charge of said coal, promised the plaintiff to pay the said plaintiff therefor." The agent testified in the trial hereof below, among other things, that when she came to take charge of the coal she notified Tompkins that it belonged to the plaintiff and that she would take possession of it, but that if he did not want it she would move it out of the yards, or sell it there; that Tompkins said to let it alone and if he took it he would take care of it and would pay for it, but to let the matter rest three or four days until he could come to an agreement with Turner whereby he could run the yards again; that he did not think she could take charge of the coal, and she left it there.

The only semblance of a written agreement on his part was a letter written November 15, 1912, in which Tompkins stated to the plaintiff company that he had finally obtained a contract from Turner under which the latter was to collect the outstanding debts due and account to Tompkins, and that he had succeeded in getting into the contract the provision that

Coal Co. v. Tompkins.

all the profits derived from the business were to be credited to the account of Turner, including the plaintiff's claim.

Turner testified that after turning the yard over to Tompkins and notifying the plaintiff's agent, Tompkins took charge of the coal and sold it, except two tons which Turner had already sold; that he, Turner, had been dealing with the company for some time; that Tompkins took possession of the yards early in the morning of October 31 and plaintiff's agent did not get over until about noon.

We have examined and reëxamined the record and fail to find any evidence to support the plaintiff's contention. It is beyond question that the coal was sold to Turner, and when it was so sold and delivered to him in the yards it became his property free from any lien on the part of the plaintiff. When thereafter he sold it to Tompkins under the written contract, by which it was agreed that the claim of the plaintiff should be paid out of the profits of the business, it became the property of Tompkins. The debt was Turner's debt, and whatever statements Tompkins may have made regarding his intention to pay for the coal, there is no claim that he made any promise in writing, and there can be no claim that the plaintiff ceased to hold Turner liable in the face of the fact that he was sued on the same claim some time after the transactions in October.

We have examined the instructions refused and those given, and find no material error in the trial court's rulings in these respects. The jury seem to have become confused over the matter of verbal promises and do not seem to have understood that the title to the coal first passed to Turner and then to Tompkins.

It appears that the defendant has certain profits which could be applied on the claim sued on, and in order that full justice may be done the judgment is reversed and the cause remanded for further proceedings in accordance herewith.